# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### EUGENE DIVISION

**JEANNINE STEIN,**

      Plaintiff,

    v.

**FOREMOST INSURANCE COMPANY, GRAND RAPIDS, MICHIGAN,**

      Defendant.

_____

No. 6:23-cv-01331-AA

**OPINION & ORDER**

AIKEN, District Judge.

This case comes before the Court on a Motion for Summary Judgment filed by Defendant Foremost Insurance Company. ECF No. 14. The Court concludes that this motion is suitable for resolution without oral argument. For the reasons set forth below, the motion is GRANTED.

## LEGAL STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury

could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630-31.

## BACKGROUND

Defendant Foremost Insurance Company Grand Rapids, Michigan is a Michigan corporation authorized to issue insurance and conduct business in Oregon. Compl. ¶ 3. ECF No. 1.

Defendant issued a homeowner's insurance policy, No. 381-0090405427-09 (the "Policy") to James Stein to insure a house at 3362 Wisteria St. in Eugene, Oregon (the "Wisteria House"). Michels Decl. Ex. A, at 4-5. ECF No. 15. Relevant to the present case, the Policy was renewed for the period June 18, 2022, though June 18, 2023. *Id.* at 4. James Stein was the only named insured under the Policy. *Id.* at 6.

James Stein was also the only the named insured under the 2021-2022 iteration of the Policy.  Second Michel Decl. Ex. A.  ECF No. 20.

James Stein was the purchaser of the Wisteria House and Mr. Stein was the only person whose name was initially on the deed.  Michels Decl. Ex. B, at 3-4. Plaintiff Jeannine Stein was the wife of James Stein.  The Steins did not reside in the Wisteria House, which they had purchased as an investment property, although they did live nearby.  *Id.* at 5, 15.  Mr. Stein became ill shortly after purchasing the Wisteria House and was unable to get the property into rentable condition, so the House was vacant for a time after the Steins acquired it.  *Id.* at 14.  Prior to the loss giving rise to this case, the Wisteria House had suffered incidents with squatters, burglars, and vandals.  *Id.* at 8-9; Ex. C, at 3, 8.

Plaintiff's son Kirk Wilson lived in the Wisteria House for approximately two years in a leased option with the expectation that he would purchase the house from the Steins.  Michels Decl. Ex. B, at 7.  The Steins entered a land sale contract with Wilson in March 2022.  Pl .Mot. Ex. 3, at 15. ECF No. 18.  Wilson never made the downpayment to purchase the Wisteria House and Plaintiff testified that Wilson never owned the property.  Michels Decl. Ex. B, at 7.

At some point, Wilson began a substantial remodeling and rewiring of the Wisteria House, but he did not secure permits before beginning work.  In March 2022, Eugene city inspectors issued a stop work order directing Wilson to stop all unpermitted remodeling and rewiring at the Wisteria House.  Michels Decl. Ex. E, at 1. On April 12, 2022, the city assessed fines for the code violations in the amount of

$6,160.00.  *Id.* at 3.  In connection with the stop work order, the municipal government also disconnected the utilities on April 22, 2022, pending the corrections of the safety hazards and code violations.  *Id.* at 2.

On April 22, 2022, James Stein passed away of natural causes.  Michel Decl. Ex. F.  Following Mr. Stein's death, Plaintiff became the sole owner of the Wisteria House.  Pl. Ex. 3, at 2.  On May 25, 2022, Plaintiff filed a small estate affidavit for James Stein in Lane County Circuit Court indicating that Plaintiff was to receive the entire estate save for life insurance payments and some specific bequests made to Mr. Stein's other heirs.[1]  Pl. Ex. 5, at 5, 12-13.  Plaintiff later signed an Affidavit of Ownership for the Wisteria House on January 25, 2023.  Pl. Ex. 3, at 12.  ECF No. 18-3.  Defendant was not notified of Mr. Stein's passing and issued the renewed Policy in Mr. Stein's name in June 2022.

On April 26, 2022, sheriff's deputies responded to a call at the Wisteria House where they found Wilson "stripping the house of all the things he'd done there," including cabinets, flooring, doors, and the stove.  Michels Decl. Ex. D, at 13.  Plaintiff told the deputies that the Wisteria House belonged to her and Mr. Stein and that Wilson "should not be there."  *Id.*  Wilson caused significant damage to the Wisteria

---

[1] The Court notes that the value of James Stein's estate at the time of his passing likely exceeded the maximum value for a small estate affidavit, given that he was the owner of multiple pieces of real property, including the Wisteria House.  The Court also notes that, in preparing the small estate affidavit for James Stein, Plaintiff checked the box indicating that James Stein owned *no* real property, even though Mr. Stein owned, at the very least, the Wisteria House and the Steins' marital home.  Pl. Mot. Ex. 5, at 3.  The significant point, for the Court's purposes, is that no formal probate estate was created, and no personal representative was appointed to represent the Estate of James Stein.

House. Michels Decl. Ex. B, at 13. The sales contract agreement between Plaintiff and Wilson was terminated on June 13, 2022, for non-payment. Pl. Ex. 3, at 11.

The Wisteria House was vandalized again on or about July 13, 2022. Michels Decl. Ex. B, at 13. A claim was presented to Defendant in connection with the vandalism. Plaintiff, through her agent, informed Defendant that James Stein had passed away on July 15, 2022. Pl. Mot. Ex. 6. Defendant investigated the claim and, after examining the Wisteria House, it found:

> No contents as house was empty. Extensive building damage: all exterior and interior lights removed, several interior doors removed with casing, hardwood floor in downstairs bedroom removed, insulation and drywall removed and damaged, all kitchen cabinets removed, toilet and sinks removed, bathtub removed, electrical panels removed, wires and plumbing cut.

Michels Decl. Ex. G, at 1.

On October 25, 2022, Defendant issued a payment to the Estate of James Stein under the Policy in the amount of $38,817.96 for losses to the dwelling and $2,035.01 in personal property losses for the Actual Cash Value of the claim, less the deductible. Michel Decl. Ex. G, at 3.

Plaintiff undertook significant repairs to the Wisteria House in 2023 to get the property ready for sale. Michels Decl. Ex. B, at 11-12. On June 5, 2024, Plaintiff sold the Wisteria House for $250,164.03. Michels Decl. Ex. H, at 1. This was substantially less than the assessed value of the property in 2023. Pl. Ex. 3, at 9.

Plaintiff filed this action in her own name on September 13, 2023. ECF No. 1. During conferral in January 2024, Defendant's counsel notified Plaintiff's counsel that Plaintiff was not the proper party and that the actions should have been filed on

behalf of the Estate of James Stein.  Michel Decl. Ex. I, at 1.  Defendant's counsel suggested that the Estate of James Stein be substituted for Plaintiff.  *Id.*  Plaintiff's counsel responded that there was no probate following Mr. Stein's death and that none was needed.  *Id.*  No substitution of parties was made.

## DISCUSSION

Plaintiff brings claims for (1) breach of contract; (2) breach of the duty of good faith and fair dealing; and (3) negligence in the performance of an insurance contract. Defendant moves for summary judgment on the basis that Plaintiff is not an insured under the Policy and that she is not the real party in interest because she has brought these claims on her own behalf rather than on behalf of the Estate of James Stein. Defendant also contends that Plaintiff's claim for negligence falls beyond the bounds of the Oregon Supreme Court's decision in *Moody v. Oregon Community Credit Union*, 371 Or. 772 (2023).

## I.    Interpretation of Insurance Contracts Generally

A federal court, sitting in diversity jurisdiction, applies state law to interpret an insurance policy.  *Travelers Prop. Cas. Co. of Am. v. ConocoPhillips Co.*, 546 F.3d 1142, 1145 (9th Cir. 2008).  Under Oregon law, "[t]he overriding goal in construing an insurance policy is to ascertain the intention of the parties." *Hunters Ridge Condo. Ass'n v. Sherwood Crossing, LLC*, 285 Or. App. 416, 422 (2017) (internal quotation marks and citation omitted).  The court determines "the intention of the parties by analyzing the policy's express terms and conditions."  *Id.* (citing *Hoffman Constr. Co. v. Fred S. James & Co.*, 313 Or. 464, 469 (1992), and ORS 742.016(1) (providing that,

with some exceptions, "every contract of insurance shall be construed according to the terms and conditions of the policy.")). The court interprets the terms of the policy from the perspective of an "ordinary purchaser of insurance." *Id.* (quoting *Congdon v. Berg*, 256 Or. App. 73, 87 (2013)) (quotation marks omitted). "The language used in a contract of insurance is entitled to a construction as favorable to the insured as in good conscience will be permitted, and every reasonable intendment will be allowed to support a view that will protect the insured and prevent forfeiture." *Schweigert v. Beneficial Standard Life Ins. Co.*, 204 Or. 294, 301 (1955) (citations omitted).

If an insurance policy explicitly defines a phrase, the court must apply that definition. *Holloway v. Republic Indem. Co. of America*, 341 Or. 642, 650 (2006). If the policy does not define the phrase in question, the court resorts "'to various aids of interpretation to discern the parties' intended meaning.'" *Id.* (quoting *Groshong v. Mutual Enumclaw Ins. Co.*, 329 Or. 303, 307-08 (1999)). "Under that interpretive framework, [the court] first consider[s] whether the phrase in question has a plain meaning, *i.e.*, whether it 'is susceptible to only one plausible interpretation.'" *Id.* (quoting *Groshong*, 329 Or. at 308). "If the phrase in question has a plain meaning, [the court] will apply the meaning and conduct no further analysis." *Id.* "If the phrase in question has more than one plausible interpretation, [the court] will proceed to the second interpretive aid"—"[t]hat is, [the court] examine[s] the phrase in light of 'the particular context in which that phrase is used in the policy and the broader context of the policy as a whole.'" *Id.* (quoting *Hoffman Const.*, 313 Or. at 470) (alteration normalized).

"If the ambiguity remains after the court has engaged in those analytical exercises, then any reasonable doubt as to the intended meaning of such a term will be resolved against the insurance company." *North Pacific Ins. Co. v. Hamilton*, 332 Or. 20, 25 (2001) (internal quotation marks and citation omitted, alterations normalized). "[A] term is ambiguous . . . *only* if two or more plausible interpretations of that term withstand scrutiny, i.e., continue[ ] to be reasonable[.]" *Hoffman Const.*, 313 Or. at 470 (emphasis in original).

Exclusions are interpreted like any other terms in the policy. *Bighorn Logging Corp. v. Truck Ins. Exch.*, 295 Or. App. 819, 828-29 (2019). Generally, the insured bears the initial burden of proving coverage, the insurer has the burden of proving exclusions to coverage, and the insured has the burden of proving exceptions to exclusions. *Employers Ins. of Wausau, A Mut. Co. v. Tektronix, Inc.*, 211 Or. App. 485, 509, 514 (2007) (reasoning the party seeking the benefit of a particular provision generally bears the burden of proving its application).

## II.    Plaintiff is not an "Insured" under the Policy

Defendants contends that, because James Stein died before the Policy period began, that he is the only "insured" under the Policy and that provisions extending coverage to the family members of the insured do not apply.

The Policy identifies the "Insured" as follows:

> You, your, and yours mean the person or entity named on the Declarations Page. You, your, and yours also mean any **family member** of the person or persons named on the Declarations Page.

Michel Decl. Ex. A, at 10 (emphasis in original).

The person named on the Declarations Page of the Policy is James Stein. Michel Decl. Ex. A, at 6. The question, then, is whether Plaintiff qualifies as a "family member" of Mr. Stein. "Family member" is defined, in relevant part, as follows:

**Family member** means a person who:

1. Resides in your household; and

2. Is related to you by:

a. Blood        c. Adoption

b. Marriage; or

**Family member** also means . . .

A person who is related to you by blood, marriage, or adoption and resided in your household before you moved from your **premises**, but only until the end of the Policy Period shown on the Declarations Page[.]

Michel Decl. Ex. A, at 11 (emphasis in original).

Premises is defined as the "dwelling that is described on the Declaration Page where you reside on the inception date of the Policy Period," as well as the other structures and grounds where that dwelling is located. Pl. Mot. Ex. 1, at 20-21.

Here, Plaintiff was married to Mr. Stein and she resided with him until his passing, but Mr. Stein died on April 22, 2022, *before* the Policy period, which ran from June 2022 to June 2023. As a result, Plaintiff did not reside with Mr. Stein during the Policy Period.[2]

Plaintiff asserts that there is an ambiguity in the portion of the Policy that defines a family member as someone related by marriage who "resided in your

---

[2] The Steins resided together in their marital home as the Wisteria House was an investment property.

household before you moved from your premises, but only until the end of the Policy Period shown on the Declarations Page." Plaintiff argues that she did reside with Mr. Stein but that he "moved from his premises" when he died and that this occurred before the end of the Policy period.

This interpretation is not reasonable. The definition of "family member" in the Policy is stated in the present tense—a person "who *is* related" to you by marriage. Plaintiff was married to Mr. Stein, but they were not married at the time of the Policy Period or at the time of the loss because Mr. Stein had died before either occurred.[3]

The "insured" in this case was James Stein and, by extension, the Estate of James Stein. Because Mr. Stein died before the Policy Period, Plaintiff was not an "insured" under the Policy as a "family member."

A separate argument has been raised concerning the Transfer Provision of the Policy, which provides

> You may not transfer any interest in this policy without our written consent. If you die, this policy will continue in force for other members of your family entitled to coverage at the time of your death or your legal representative, but only with respect to coverages provided by this policy at the time of death and only for the remainder of the Policy Period shown on the Declarations Page.

Michels Decl. Ex. A, at 12.

Plaintiff argues, in essence, that we should bring the coverage of the prior Policy Period forward because Plaintiff was a family member of Mr. Stein at the time

---

[3] The Court also notes that the term "premises" is defined in the Policy as the place where the insured dwelled "at the inception date of the Policy Period." Pl. Mot. Ex. 1, at 20. Here, Plaintiff had been deceased for almost two months by the inception date of the Policy Period and did not dwell anywhere. As a result, he cannot be said to have moved from the premises during the Policy Period.

of his death and Policy was renewed after Mr. Stein's death.  The most obvious problems with this argument are that (1) Mr. Stein died before the Policy Period at issue and nobody told Defendant about his passing until after the loss; and (2) even by its own terms, the Transfer Provision states that continuation of the Policy after the death of the named insured applies "only with respect to coverages provided by *this* policy at the time of death."  *This* Policy, meaning the policy that would cover the loss, did not commence until June 2022 and did not provide any coverage to Plaintiff at the time of Mr. Stein's death.

The plain meaning of the Transfer Provision is that Plaintiff would continue to enjoy coverage under the previous Policy as a "family member" from the time of Mr. Stein's death in April 2022 until the expiration of the prior Policy Period in June 2022.  That coverage lapsed when the prior policy ended and did not renew when the new Policy Period began.  Because Mr. Stein did not die during the life of the 2022-2023 Policy, the Transfer Provision does not apply.  Plaintiff's contrary interpretation is not reasonable or plausible.

In sum, Plaintiff is not an insured under the Policy and has no right to seek coverage for losses under the Policy in her own right.  Defendant is entitled to summary judgment on Plaintiff's claims.[4]

---

[4] Plaintiff's claim for negligence under *Moody* is for negligent performance of an insurance contract and is dependent on Plaintiff's status as a covered insured entitled to enforce the insurance contract. Compl. ¶¶ 29 (Alleging that, because of Defendant's negligence, Plaintiff "suffered the economic loss of the value of the contractual benefit.") and 30 (alleging non-economic losses arising from Defendant's failure to meet its obligations under the contract).

### III.    Plaintiff is not the real party in interest

Defendant asserts that Plaintiff is also not a real party in interest.  Federal Rule of Civil Procedure 17 provides that an action "must be prosecuted in the name of the real party in interest," and provides a list of those who may sue in their own names without joining the person for whose benefit the action is brought: an executor; an administrator; a guardian; a bailee; a trustee of an express trust; a party with whom or in whose name a contract has been made for another's benefit; and a party authorized by statute.  Fed. R. Civ. P. 17(a)(1).

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action.  After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Fed. R. Civ. P. 17(a)(3).

Rule 17 relief is available "where counsel makes an 'understandable' error in naming the real party in interest." *Jones v. Las Vegas Metro. Police Dept.*, 873 F.3d 1123, 1128 (9th Cir. 2017).  "The purpose of the rule is to prevent forfeiture of a claim when an honest mistake was made." *Id.* (internal quotation marks and citation omitted).  Rule 17(a)(3) also applies when it is difficult to determine which party is the correct party entitled to bring an action. *United States for Use & Benefit of Wulff v. CMA, Inc.*, 890 F.2d 1070, 1074 (9th Cir. 1989).  When considering a Rule 17(a)(3) substitution, the court must also weigh any prejudice that could be suffered by the defendants. *Hassanati ex rel. Said v. Int'l Lease Fin. Corp.*, 643 F. App'x 620, 622 (9th Cir. 2016).

Here, the earliest notice that Plaintiff was not the real party in interest was when Defendant paid benefits under the Policy in a check made out to the Estate of James Stein. Michel Decl. Ex. G, at 3, 5-6. Defendant's counsel advised Plaintiff's counsel early the case that Plaintiff was not the correct party and that the action should be maintained on behalf of the Estate of James Stein. Defendant's counsel offered, in January 2024, to allow a substitution for the correct party. Defendant's counsel's offer was rebuffed. Michel Decl. Ex. I, at 1.

This is not a situation where the identity of the correct party is difficult to discern. Despite Plaintiff's best efforts in litigating the present motion, the terms of the Policy are clear and exclude Plaintiff as an insured.

Finally, the Court notes that, in preparing the small estate affidavit, Plaintiff affirmatively answered that Mr. Stein owned no real property. Pl. Mot. Ex. 5, at 3. Plaintiff did this despite knowing that Mr. Stein owned at least two houses (the marital home and the Wisteria House). The reason for the omission is plain on the face of the small estate affidavit form—the maximum total value allowed for real property was $200,000 and, even in its damaged state, the Wisteria House was successfully sold for more than $250,000. Plaintiff made a strategic, if unwise, decision to avoid formal probate of Mr. Stein's estate. Relief under Rule 17(a)(3) is not available when the failure to name the correct party is the result of a strategic decision. *Dunmore v. United States*, 358 F.3d 1107, 1112 (9th Cir. 2004).

In sum, the Court concludes that the failure to name the correct party was not an understandable or honest mistake. The Court also concludes, for reasons

discussed in greater detail in the following section, that allowing substitution at this late point would be prejudicial to Defendant. Relief under Rule 17(a)(3) is not available to Plaintiff.

### IV.    Leave to Amend

Plaintiff argues that, if she is not entitled to coverage as an insured under the Policy, she should be given leave to file an amended complaint to name the correct party.

District courts have significant discretion when considering leave to amend and should grant leave "when justice so requires." *DCD Progs., Ltd. v. Leighton*, 833 F.2d 183, 185-86 (9th Cir. 1987); Fed. R. Civ. P. 15. Leave to amend should be given absent a strong showing of prejudice, undue delay, bad faith, futility, or where a previous amendment failed to cure the deficiencies. *Eminence Cap., LLC v. Aspeon*, 316 F.3d 1048, 1052 (9th Cir. 2003). Undue prejudice to an opposing party is given the greatest weight and its presence alone is sufficient to deny leave to amend. *Id.* Conversely, undue delay by itself is insufficient grounds for denial. *DCD Progs., Ltd.*, 833 F.2d at 186.

Moving for leave to amend after the close of discovery and during the pendency of a motion for summary judgment reflects undue delay. *Payne v. City of Eugene*, 760 F. Supp.3d 1157, 1165 (D. Or. 2024) (citing *Schlacter-Jones v. Gen. Tel. of Cal.*, 936 F.2d 435, 443 (9th Cir. 1991)). Proposed amendments should be filed in a reasonable time after a party knew or should have known the relevant facts and theories for an amendment. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990). Here,

Plaintiff sought leave to amend in her Response to Defendant's motion for summary judgment. ECF No. 18. The Response filed only six days before the close of discovery. Discovery had been closed for more than a week by the time the motion for summary judgment was fully briefed. ECF No. 17. In addition, the Court notes that Defendant alerted Plaintiff's counsel to the issue of the proper plaintiff in January 2024—nine months before Plaintiff sought leave to amend. The Court concludes that the request for leave to amend has been unduly delayed.

The Court also concludes that Defendant would be substantially prejudiced by the granting of leave to amend. Defendant represents that, if amendment were allowed so the case could be brought on behalf of the Estate of James Stein, it would need to identify estate participants, take depositions, seek additional documents, and establish both the legitimacy of the Estate and the ability or authority of anyone to speak on the Estate's behalf. The need to re-open discovery would delay the resolution of the case and increase litigation costs, which constitute prejudice. *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989); *see also Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint.").

The Court finds that the combination of undue delay and prejudice to Defendant justify the denial of Plaintiff's request for leave to amend, without the necessity of reaching Defendant's additional argument concerning futility or the

question of bad faith.  Plaintiff's request for leave to file an amended complaint is denied.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment, ECF No. 14, is GRANTED.  Plaintiff's request for leave to file an amended complaint is DENIED.  This case is DISMISSED without prejudice to allow the case to be brought in the name of the correct party.  All other pending motions are DENIED as MOOT.  Final judgment shall be entered accordingly.

It is so ORDERED and DATED this  3rd  day of June 2025

 /s/Ann Aiken                                                
ANN AIKEN
United States District Judge